FOX v. ROETHLISBERGER.

LANDLORD AND TENANT—ABANDONMENT OF PREMISES—MITIGATION OF DAMAGES.

Finding of trial court in suit to reform a lease in which reformation was conceded by defendant tenants, that latter were liable for rent for period after they had abandoned the premises until they were relet, is affirmed, as supported by competent evidence and record does not disclose that plaintiffs had wrongfully failed to mitigate the damages.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted April 17, 1957. (Docket No. 60, Calendar No. 46,989.) Decided October 7, 1957.

Bill by Samuel Fox and Cera Fox against Harold J. Roethlisberger and George E. Coon to reform lease and for money decree for breach. Decree for plaintiffs. Defendants appeal. Affirmed.

*Hammond & Schram,* for plaintiffs.

*Nuel N. Donley,* for defendant Roethlisberger.

*James R. Rood,* for defendant Coon.

VOELKER, J. On October 5, 1953, and before the end of their term the defendants vacated a Lansing store building they had leased from the plaintiffs and the latter filed their bill to reform the lease and

*Continued from Volume 349 Michigan.

REFERENCES FOR POINTS IN HEADNOTES
32 Am Jur, Landlord and Tenant §§ 519, 520, 862.

obtain a money decree for the 9 months the premises
had remained empty until rerented. The bill was
filed to reform the lease because of a scrivener's error,
but this need not directly concern us here since the
defendants conceded the error and the need to re-
form. The defendants denied liability mainly on
the ground that plaintiffs had refused to relet the
premises to one Marshall whom they alleged was
upon vacancy ready, willing and able to rerent the
premises upon the same terms, and that plaintiffs
had thus wrongfully failed to mitigate damages.

At the hearing below one of the plaintiffs and his
real-estate agent, Mr. Baker, testified that they had
made repeated efforts to rent the premises after the
abandonment but for 9 months were unsuccessful.
The plaintiff said he called on several Lansing busi-
ness men and his agent Baker said he put up "For
Rent" signs and saw or phoned 18 or 20 people. De-
fendants did not testify but produced Marshall who
testified that on or about October 5, 1953, he had
phoned Baker and offered to rent the vacated prem-
ises on the same terms, but that Baker had turned
down this offer because Marshall's business would
compete with that of another tenant in the same
building. Marshall also testified that some 2 months
later Baker phoned Marshall (who had in the mean-
time gotten other quarters) and offered to rent him
the premises at a lower figure, all of which Baker
denied, saying that he had himself twice phoned
and tried to interest Marshall at the original rental
figure but could get no firm offer. The record also
shows that upon vacating the defendants tendered
plaintiffs' agent a key so that rental signs could be
put up, which was done. Following the hearing the
court found for the plaintiffs and entered a decree
accordingly, from which this appeal results.

Both parties seek to propound and discuss here
many knotty and profound questions as to the state

of the law in Michigan in these situations. Some of
these questions—either tacitly or expressly—are as
follows: Is there a duty on a landlord to act to re-
rent premises wrongfully abandoned in order to miti-
gate damages or may he choose to let the premises
remain idle? Does the landlord's efforts to rerent
constitute a re-entry by him in any case imposing a
duty to use diligence in seeking a new tenant to
minimize damages? If the landlord has such a duty,
must he rerent at a lower figure? Or accept a new
tenant who may compete with others of his tenants?
Or accept a new tenant engaged in a different busi-
ness from that of the original tenant under the aban-
doned leasehold? Does the burden of proving dili-
gence to rerent to mitigate damages rest upon the
landlord to show or upon the tenant to refute?

Some of these interesting questions are discussed
or touched upon in annotations in 40 ALR 190 and
126 ALR 1219. Our opinion in *Michigan-Lafayette
Building Co.* v. *Continental Bank,* 250 Mich 591,
seems, obliquely at least, to imply that we might be
inclined to place some burden on the landlord to
mitigate damages in these situations. But we do not
think it is necessary for us to grapple with these
large prickly questions to decide this case. What-
ever the state of the law of Michigan may or should
be on these and other related questions—there is in
fact a remarkable paucity of authority—it seems
enough to say here that, taking a view of the
law most favorable to the defendants, there was
evidence that the plaintiffs and their agent did in
fact endeavor to rent the premises; that they were
finally successful; and that the defendants, who did
not testify, did nothing whatever (beyond delivering
a key) to mitigate their own damages, so far as this
record discloses.

Whether Baker called Marshall or vice versa, or
whether Baker sought to lease the premises to Mar-

shall at the original lease figure or a lower one, one fact plainly emerges: he was at least trying to rent the place, duty or no duty. We see no point in discussing the possible legal effect here of re-entry under terms of the lease by the landlord because our record shows that the defendants upon vacating consented to let the landlord put up "For Rent" signs and gave his agent a key to do so. Nor is there any claim made here that plaintiffs consented to the abandonment of the premises or that equity is not the proper forum for this action. It further appears that Marshall never saw either the owner or Baker, and that whatever offers he may have made were conveyed to Baker over the phone. There is no showing that as part of this "offer" Marshall proffered a lease or a sublease or of when he proposed to take over or for how long a term. Wherever the burden of showing or refuting the landlord's due diligence may properly lie (which we do not decide), the present defendants may in any case scarcely be said to have met or refuted it as neither of them testified and the plaintiffs' evidence on this score is uncontradicted, except as for Marshall. Finally we cannot help mildly speculating why, if the defendants could produce Marshall later as a witness, they could not have produced him earlier as a tenant. They chose to do nothing but get hence from the premises.

Whether the circuit judge reached a right result for right reasons or wrong ones we do not feel compelled to pass on. We think it is enough to say that the result he reached appears, under the circumstances, to be a sound one supported by competent testimony and that, therefore, his decision must be affirmed, with costs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.